## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SARAH E. THOMPSON; and EDWARD T. METZ,

     *Plaintiffs,*

v.

BRIAN KEMP in his official capacity, acting as
the Governor of the State of Georgia;

BRAD RAFFENSPERGER in his official capacity,
acting as the Georgia Secretary of State;

BULLOCH COUNTY BOARD OF ELECTIONS;
THERESA JACKSON, in her official capacity as
MEMBER AND CHAIRWOMAN of the Bulloch
County Board of Elections; JIM BENTON, in his
official capacity as MEMBER of the Bulloch County
Board of Elections; WILLIAM DAUGHTRY, in his
official capacity as MEMBER of the Bulloch County
Board of Elections; SHONTAY JONES, in her official
capacity as ELECTION SUPERVISOR of Bulloch
County; COBB COUNTY BOARD OF
ELECTIONS AND REGISTRATION; TORI SILAS
in her official capacity as MEMBER AND
CHAIRWOMAN of the Cobb County Board of
Elections and Registration; STEVEN F. BRUNING,
in his official capacity as MEMBER of the Cobb County
Board of Elections and Registration; STACY EFRAT
in his/her official capacity as MEMBER of the Cobb
County Board of Elections and Registration; DEBBIE
FISHER in her official capacity as MEMBER of the Cobb
County Board of Elections and Registration; JENNIFER
MOSBACHER in her official capacity as MEMBER of
the Cobb County Board of Elections and Registration;
TATE FALL in her official capacity as Cobb County
Director of Elections,

     *Defendants.*

No. **1:24-CV- 4987**



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 3 1 2024

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

**VERIFIED COMPLAINT FOR EMERGENCY MOTION FOR
<u>TEMPORARY RESTRAINING ORDER</u>**

Comes now, Sarah E. Thompson and Edward T. Metz, Plaintiffs in the

above-styled action, and file this Verified Complaint for an Emergency Motion for

Temporary Restraining Order against the Defendants and, in support thereof, state

as follows:

## INTRODUCTION

Suits to restrain state officials from taking certain actions in contravention of

federal statutes or to compel the undertaking of affirmative obligations imposed by

the Constitution or federal laws are common.[1] Plaintiffs should not be abandoned

to imminent, concrete, particularized irreparable injury because of the unlawful,

repeatedly-implemented scheme of fully-warned Defendants. Pending acts by

Defendants were discovered in the final remaining days for the application of

Plaintiffs' active voting rights. Plaintiffs have one chance to have their votes

counted in the Presidential General Election on November 5th, and under status

quo conditions, they will not be. If there was ever a time for the federal courts to

act in defense of our U.S Constitution, 10th Am. and Article 4, § 4 guarantee to a

---

[1] *E.g.*, Milliken v. Bradley, 433 U.S. 267 (1977); Edelman v. Jordan, 415 U.S. 651,
664–68 (1974); Quern v. Jordan, 440 U.S. 332, 346–49 (1979).

republican representative form of government, civil voting rights, equal protection, and due process rights, the time is now.

This emergency complaint represents imminent unlawful conditions that are an affront to fundamental, long-standing State election laws of Georgia's General Assembly, primarily O.C.G.A. § 21-2-437. This statute dates back to the Ga Code of 1863, § 1234 in declaring the mandatory procedures for the human counting of our votes and the procedure for duly certifying returns at our constitutional, fixed Places of election. Each elector is assigned to one Voting Precinct (Election District) under O.C.G.A. 21-2-2(6) & (28). At this time, advance polling locations are considered polling locations, yet they are oddly not associated with an elector's Precinct area.

An electronic home alarm system and accompanying surveillance equipment is similar to what the Georgia legislature adopted in O.C.G.A. § 21-2-300 for use in Plaintiffs' polling place. It is a system; the legislature **did not adopt a voting machine.** Georgians vote by paper ballots produced by ballot marking devices or by paper absentee ballots. The Georgia Supreme Court issued a substantive Order on October 19, 2020 in *Rhoden v. Athens-Clarke Brd of Elections*, 310 Ga. 266, 850 S.E.2d 146, 147 (2020) stating that our current elections are deemed to be conducted **via paper ballot**. The holding is based

2.

squarely on State law prescribing elections conducted by paper ballot found in O.C.G.A. § 21-2-437, and cited 25 times for emphasis in the Order.

As citizens who choose to register to vote and choose to attempt to vote, Plaintiffs are particularly injured from past voting experiences and have imminent repeat irreparable injury scheduled promptly by the Defendants for November 5th, 2024. As citizens who are not given the option of casting a provisional paper ballot, which is the only paper ballot upon which voting steps of State law for paper ballots appear to be followed by their county officials, the Plaintiffs are particularly injured. Plaintiffs assuredly will succeed on the merits, and the granting of a temporary restraining order is in the immediate public interest. Many Georgians have been waiting on relief for years.

O.C.G.A. § 21-2-437 "Procedure as to count and return of votes generally" is a simple procedure that is not being conducted upon Plaintiffs' cast ballots in Bulloch or Cobb County nor has it been since the statewide implementation of the system in the March 2020 Presidential Primary in Georgia. Georgia officials have avoided the order by promulgating executive administrative rulings that egregiously contradict State law, such as those in Ga. Comp. R & Regs. r. 183-1-12-.12(a). The admin rule "OMITS" paper ballot counting and procedure clearly state in O.C.G.A. § 21-2-437(a). The admin rule "SKIPS" the required

3.

ministerial act by all poll officers to duly certify lawful returns based on vote totals derived from ink tally papers in O.C.G.A. § 21-2-437(a) & (b).

Bulloch and Cobb County election superintendents do not intend to follow State law, as indicated by failure to respond to an ante-litem notice issued to them on October 8th and other direct statements. (See Exhibit A). Governor Kemp, Secretary of State Raffensperger, and numerous state attorneys failed to issue a statement or even respond to an October 24th, 2024 request for an executive order to ensure that State law is faithfully executed statewide. These officials collaborate to cause direct and particular denial and deprivation of the Plaintiffs' federal right at their polling locations in Bulloch and Cobb counties, respectively. The definition of "vote" in 52 U.S.C. 10101(e) must necessarily include the casting and **counting of the vote, and having their vote included in the lawful vote totals.** This is the essential basis for County and State election certifications.

Plaintiffs have been repeatedly injured by acts of their county and state officials to directly deter and consistently fail to comply with State law since March 2020. Irreparable injury is imminent on November 5th at their polling locations. Plaintiff Thompson has eye-witnessed the improper closing of the polls, which includes poll officers (clerks and managers) removing paper ballots from a black box receptacle, then sealing them in a transport container. Poll managers sign electronic "result tapes," post copies on the window. Then, they pack up the other

4.

property, seal the voted ballot container, and immediately transfer their

UNCOUNTED and voted paper ballots from the constitutional Time and Place of

election to the county for further processing. This is done prior to completion of

federally defined voting actions by sworn poll officers. At no time do poll officers

conduct the lawful procedure of O.C.G.A. § 21-2-437 upon Plaintiffs' cast ballots.

We have a Bill of Rights in Georgia, and, by State law our votes must be

counted and precinct returns must be duly certified by human acts of sworn poll

officers upon Plaintiffs' paper ballots. These certified precinct returns and tally

papers used to generate them are required election documents in Bulloch and Cobb

county, constitutional and jurisdictional areas of election within the sovereign State

of Georgia.

Plaintiffs' federal right to vote for their U.S. Representative and U.S.

President are being directly violated at their polling locations because voting by

paper ballot is not being administered. U.S.C. § 9 requires voting by printed ballot

or voting machine, or the votes will be of **no effect**. 3 U.S.C. § 1 requires

presidential electors to be appointed by the laws of the State on Election Day. This

is through lawful voting, which is not occurring. Plaintiffs cannot be denied their

right to vote for these federal officials.

Plaintiff Thompson is a Veteran officer of the U.S. Army Adjutant General

and Plaintiff Metz is a Veteran of the U.S. Navy. Both maintain their oaths to

5.

support and defend the U.S. Constitution, having done so honorably. Public officials swear to support the U.S. Constitution and that of this State per O.C.G.A. § 45-3-1. This is an action brought under 52 U.S.C. § 10307(a)(b) and 42 U.S.C. § 1983, seeking this Court to issue an Emergency Motion for Temporary Restraining Order to protect the Plaintiffs from being particularly, concretely, and irreparably denied their federal right to vote on November 5, 2024.

Plaintiff Thompson intends to attempt to exercise her complete federal voting right at the Fairgrounds Voting Precinct in Bulloch County on November 5, 2024. Plaintiff Metz cast his ballot at South Cobb Community Center on October 21, 2024. However, his ballot has yet to be counted or included in vote totals, as absentee ballots cannot be counted until Election Day by State law. Yet, neither will be able to do so because of imminent irreparable injury, that will generate cause for further federal claims

## STATEMENT OF FACTS

1.     The state government of Georgia used tax-payer dollars to purchase what they repeatedly claimed to be a "paper-ballot system" of voting. This system is an optical scanning voting system with an electronic ballot marking device ("BMD").

A **"paper ballot"** that contains a "written summary of the voter's choices" is produced by a printer connected to the "BMD."[2]

2.      Brad Raffensperger assumed office on January 14, 2019. On August 12, 2019, he signed the Master Solution Purchase and Services Agreement with Dominion Voting Systems as "duly authorized representative" of the "State of Georgia" as Secretary of State. He consistently described this system as a "Paper-Ballot System."[3]

3.      As Chairman of the State Election Board in 2019, Secretary Raffensperger led the adoption of new rules for the new "paper-ballot system."[4] Those rules broadly omitted mandatory provisions of law in effect for voting by paper ballots. The system was first used in the Presidential Preference Primary of March 2020. Plaintiffs have attempted to vote on this system consistently since March 2020. However, it seems that no voting ever lawfully occurred in strict compliance with State laws prescribing the constitutional Time, Places, and Manner for elections.

---

[2] 2019 *Master Solution Agreement ("MSA")* between GASOS and Dominion Voting System, contract provision 3.1,
https://www.gaverifiedvoting.org/pdf/20190726-GASOS-Dominion-Master-Solution-Purchase-and-Services-Agreement-Final.pdf (last visited Oct 30, 2024).
[3] Id.
[4] *Bipartisan Rules Posted for Paper-Ballot System, Dec. 19, 2019.* Office of the Georgia Secretary of State of Georgia.
https://sos.ga.gov/news/bipartisan-rules-posted-paper-ballot-system (last visited Oct 19, 2024). ((Atlanta) -- The State Elections Board voted Tuesday to post for public comment updated rules for county officials to run elections on Georgia's new paper-ballot system, another key step in the implementation of the largest voting system rollout in U.S. history.)

Plaintiffs' voting rights will be denied again under status quo conditions set for November 5, 2024 at their respective polling locations in Bulloch and Cobb counties.

4.      According to an affirmative statement by Judge Amy Totenberg of the N.D. Ga, "The statutory provisions mandate voting on "electronic ballot markers" that: (1) use "electronic technology to independently and privately mark **a paper ballot** at the direction of an elector, interpret ballot selections, communicate such interpretation for elector verification, and print an elector verifiable paper ballot;" and (2) "produce **paper ballots** which are marked with the elector's choices in a format readable by the the elector." O.C.G.A. § 21-2-2(7.1); O.C.G.A. § 21-2-300(a)(2). *Curling v. Raffensperger*, 493 F.Supp.3d 1264, 1308-09 (2020).

5.      The term "precinct" or "precinct voting location" or "precinct polling location" is stated 39 times in the 2020 Order in *Curling v. Raffensperger*. The case emphasized the "regular exercise of the shared political experience of voting with their fellow citizens **at their local precinct location**." Curling, 80. This corresponds to the following definitions in O.C.G.A. § 21-2-2: precinct, polling place, poll officer, election district, and polling place.

6.      The October 19, 2020 Order of the Georgia Supreme Court in *Rhoden v. Athens-Clarke Brd of Elections*, 310 Ga. 266, 850 S.E.2d 146, 147 (2020) is extremely clear **and clearly ignored by Defendants**. The June 2020 election was

conducted using the system furnished to Athens-Clarke Unified Government. All

Justices, except one not participating, concurred in the following:

> "But it is clear from the record and our review of the relevant statutes
> that this election was conducted with **paper ballots.** As the trial court
> rightly noted, optical scanning voting systems and electronic ballot
> markers are technologies that **assist elections boards in conducting**
> **elections** *via paper ballots.* In that regard, they are simply **an adjunct**
> **to an election conducted** *with paper ballots*—**not a** **substitute** *for*
> *paper ballots.* Accordingly, under *Jones* , the provisions governing
> the use of paper ballots, including OCGA §§ 21-2-437 (d) and
> 21-2-438 (a), applied to this election."

7.     According to basic principles of statutory interpretation, when part of the

law is in effect, the entire law is in effect. As such, O.C.G.A. 21-2-434 (a) and (b)

require accounting of paper ballots by human hand count, tally papers, ink, and

paper procedure conducted by all poll officers. As such, the following must be

done at all polling places by sworn poll officers:

> (b) When the **vote cast** for the different persons named upon the ballots and
>
> upon the questions, if any, appearing thereon, shall have been **fully recorded**
>
> **in the tally papers and counted, the poll officers SHALL DULY**
>
> **CERTIFY** to the number of votes cast for each person and question and
>
> shall prepare in ink a sufficient number of general returns.

This is simply not occurring, nor has it been since March 2020.

8.      2 U.S.C. § 9 declares: "All votes for Representatives in Congress must be by written or **printed ballot, or voting machine** the use of which has been duly authorized by the State law; and **all votes received or recorded contrary to this section shall be of no effect.**" Georgia does not use voting machines. Plaintiffs will be directly denied their right to vote for their U.S. Representatives on November 5th. Defendants continue to uphold status quo executive rules and policies superseding State laws, as they have since the current optical scanning system was first used in the March 2020 Presidential Preference Primary in Georgia. As such, procedure for counting and return of the votes by the prescribed human method of State Law, specifically O.C.G.A. 21-2-437, will not be applied to Plaintiffs' paper ballot on Election Day, November 5th.

9.      3 U.S.C. § 1 declares "The electors of President and Vice President shall be appointed, in each State, on election day, in accordance with **the laws of the State** enacted prior to election day." Plaintiffs are also being denied their right to vote for the U.S. President on November 5th. With status quo executive rules and policies superseding State laws, procedure for counting and return of the votes by the prescribed human method of O.C.G.A. 21-2-437 will not be applied to Plaintiffs' paper ballot on Election Day, November 5th.

10.     The government of the State of Georgia is one defined by the concept of separation of powers, as is the United States. Elections must be conducted by State

10.

law per U.S. Const. art. 1, § 4, Cl. 1  which supersedes all rules of a state executive

branch.

> Article I, § II, Para. III of the Georgia Constitution declares:
>
> Paragraph III. **Separation of legislative, judicial and executive powers**. The legislative, judicial, and executive powers shall forever remain separate and distinct; and no person discharging the duties of one shall at the same time exercise the functions of either of the others except as herein provided.

> Article I, § II, Para. III of the Georgia Constitution declares:
>
> Paragraph I. **Method of voting.** Elections by the people shall be by secret ballot and shall be conducted in accordance with procedures provided by law.

11.     The November 5th Presidential General Election, which can only transfer

local, state, and federal government power by the lawful voting of American

citizens in Georgia, will be held at over 2,700 Voting Precinct Election Locations

and Advance Polling Locations in geographical election districts throughout The

State of Georgia per O.C.G.A. § 21-2-2(6).

12.     Plaintiff Thompson will attempt to cast her ballot and have her vote counted

for inclusion in the officials and certifiable vote totals on November 5th at her

assigned Voting Precinct at the Ogeechee Fairgrounds in Bulloch County.

13.     Plaintiff Thompson must rely on sworn poll officers, who are equipped and

instructed by county election officials per their official duties found in O.C.G.A. §

21-2-70 to count and return the votes as duly certified O.C.G.A. § 21-2-437 (a) &

(b), based on ink tallies sheets. Required accounting must be completed per

O.C.G.A. § 21-2-420 (a) "after the time for the closing of the polls and the last

elector voting, the poll officials in each precinct shall complete the required

accounting and related documentation for the precinct and shall advise the election

superintendent of the total number of ballots cast at such precinct and the total

number of provisional ballots cast."

14.    Plaintiff Thompson presents the following evidence and verifiable

statements and that deprivation of federal right under color of law will occur yet

again on November 5th, because Defendants will not ensure that required

accounting will occur:

    a.) Experience as a sworn poll officer witnessing poll closing procedures at

    elections held in November 2020 and January 2021. Plaintiff was given no

    opportunity whatsoever to participate in required counting and precinct

    certification procedures mandated by O.C.G.A. § 21-2-437(a) and (b). No

    paper ballots or votes thereon were counted or tallied to create a duly

    certifiable precinct return. The chief manager led the custody sealing of the

    voted ballots in a container; she then transferred them to the county

    superintendent for centralized control without a certified precinct returns

    from Plaintiffs assigned precincts.

b.) On May 29, 2024, Plaintiff corresponded with the Election Supervisor of

Bulloch County, Shontay Jones. She requested through formal, written Open

Records Request under Ga Title 50, the following: "I request a paper

photocopy of the original signed tally paper for Statesboro Precinct." Ms.

Jones answered Plaintiff that same day: "Can you please clarify what you

are referring to regarding "Tally Paper"? Ms. Jones was not even aware of

the requisite election documents that must be produced by the poll officers

at each polling location within the county jurisdiction. (Exhibit E).

c.) On October 8, 2024, Plaintiff sent a "Notice Ad Litem Demand for

Required Accounting of Paper Ballots at all Precinct Locations at the

General Election on November 5, 2024." (Exhibit A). Bulloch County failed

with an affirmative statement that they planned to comply with either

O.C.G.A. § 21-2-437 nor O.C.G.A. § 21-2-72.[5]

---

[5] Notice includes the following direct verbiage: Notice is hereby served that an election is absolutely void when not held at the proper time and place by persons qualified to hold it. *Smiley v. Gaskin,* 115 Ga. App. 547 (1967), which held this, is an annotation of O.C.G.A. 21-2-9.# As such, the Nov. 5, 2024 general election will be void if qualified precinct managers do not lawfully certify general returns from ink tallies of votes from paper ballots at each Precinct Election Location per O.C.G.A. § 21-2-437. Holding an election at the proper time and place is essential to its validity. Final Notice is hereby served that you are bound by oath to: 1) Declare the law effective as written, 2) Administer the manual counting of paper ballots, tallying of votes thereon, and ensure certification of the general returns from ink tallies at each precinct location by poll managers per O.C.G.A. § 21-2-437, and 3) Administer the county elector's right to photocopy and inspect public election property, including used paper ballots per O.C.G.A. § 21-2-72. We the People rely on you to uphold State Law. Without your adherence, Georgia will forfeit its constitutional sovereignty in yet another election and our guarantee of a republican representative form of government in U.S. Const. Art. 4, § 4. We give you until October

13.

d.) On October 11, 2024, the day of the ad litem response deadline, Plaintiff

personally visited the Bulloch County Elections. The Assistant Election

Supervisor, Marilyn Fronte, had no knowledge of the ad litem notice, nor

did she demonstrate knowledge of these requirements of State law.[6]

e.) On October 14, 2024, Plaintiff asserted the same through public

comment at a regular meeting of the Bulloch County Board of Elections.

The Board members indicated that they were unaware of the "Notice" and

pending injuries and potential criminal activity related to failure to conduct

human counting of the ballots at Voting Precinct locations. (Exhibit A).

f.) October 30, 2024, Plaintiff confirmed through phone testimony that the

Assistant Election Supervisor of Bulloch County will not instruct or require

poll officers to hand count paper ballots per O.C.G.A. 21-2-437.

15.    Plaintiff Metz cast his ballot at an advance voting location of South Cobb

Community Center on October 21, 2024. He received a sticker that read "I've

Secured My Vote," which is false. Neither Plaintiffs' ballots with votes thereon are

_____

11, 2024, 5:00 pm to communicate with us by email your intent to comply with: 1)
O.C.G.A. 21-2-437, including paper ballot vote count, tally, and certification at the
precinct election locations and 2) O.C.G.A. § 21-2-72, including inspection and
photocopy of the actual used paper ballots during usual business hours directly following
Election Day. Failure to reply will indicate to us that you have no intent to comply with
these laws, as written, and plan to leverage the use of the electronic system to do so.
[6] *Bulloch Elections Notified of Pending Constitutional Crisis on Nov 5, 2024,*
RUMBLE.COM, https://rumble.com/v5iy699-pending-felonies-bulloch-elections.html.

14.

permitted to be counted until November 5th per State law. Only then, after required procedures of State law, including O.C.G.A. § 21-2-437, executed by Defendants, will Plaintiffs' votes be "secured."

16. Plaintiff Metz presents the following evidence and verifiable statements and that deprivation of federal right under color of law will occur yet again on November 5th, because Defendants will not ensure that required accounting will occur:

a.) On October 8, 2024, Plaintiff can present evidence that Cobb County received "Notice Ad Litem Demand for Required Accounting of Paper Ballots at all Precinct Locations at the General Election on November 5, 2024." Cobb County failed with an affirmative statement that they planned to comply with either O.C.G.A. § 21-2-437 nor O.C.G.A. § 21-2-72. [7]

b.) October 30, 2024, Plaintiff confirmed through phone conversation with Tate Fall, Director of Elections, Cobb County Elections & Registration, that officials will not instruct or require poll officers to perform human hand counting of any type at the polling place on election night per O.C.G.A. § 21-2-437.

---

[7] See footnote 4 above.

15.

17.    The ballot cast by Plaintiff Metz is different than what Plaintiff Thompson

will cast. It is considered an absentee ballot per O.C.G.A. § 21-2-286 which

requires:

> (c) Such manager with two assistant managers, appointed by the
> superintendent, with such clerks as the manager deems necessary shall count
> the absentee ballots following the procedures prescribed by this chapter for
> other ballots, insofar as practicable.
>
> (d) All absentee ballots shall be counted and tabulated in such a manner that
> returns may be reported by precinct; and separate returns shall be made for
> each precinct in which absentee ballots were cast showing the results by
> each precinct in which the electors reside.

18.    O.C.G.A. § 21-2-386(c) for advance polling locations clearly requires

accounting by O.C.G.A. § 21-2-437 for absentee ballots because "procedures

prescribed by this chapter for other [paper] ballots" is what is used for counting.

This represents a simple application of the Identity Law of mathematics. $1 = 1$.

19.    52 U.S.C § 10101 Voting Rights Law (e) defines that "vote" includes "all

action necessary to make a vote effective, including… **having such ballot**

**counted and [votes thereon] included in the appropriate totals of votes cast**

with respect to candidates for public office." These acts must necessarily be

conducted by sworn poll officers and election officials.

20.    52 U.S.C § 10101 Voting Rights Law (e) defines that "affected **area**" shall

mean "any subdivision of the State in which the laws of the State relating to voting

16.

are or have been to any extent administered by a person found in the proceeding to have violated…" Voting district (VTD) is a generic term adopted by the Bureau of the Census to include the wide variety of small **polling areas**, such as election districts, **precincts**, or wards, that State and local governments create for the purpose of administering elections."[8] As such, Georgia's over 2,700 Precinct Election Locations, which are singular, fixed polling places are protected "affected areas" under federal law upholding Art. 1, Sec 4 of the U.S. Constitution. The federal voting rights of Georgia citizens must be protected **within our Voting Precincts, and at any polling location** at which Plaintiffs cast their ballot.

21. State Officials are directly thwarting our right to **VOTE at** our Precinct Election Locations and Advance Polling Locations by coercive force of false public executive acts outside of legislated State law. Plaintiffs present the following evidence of this:

a.) Brad Raffensperger was the Chairman of the State Election Board from 2019 to 2021. Under his leadership, Chapter 183, Rules of the Georgia State Election Board, was stripped of all references to effective law requiring poll officers of voting precincts to perform mandatory accounting of paper ballots per the O.C.G.A. § 21-2-437. Secretary Raffensper remains

---

[8] *Geographic Areas Reference Manual,* pg. 14-1. CENSUS.GOV. https://www2.census.gov/geo/pdfs/reference/GARM/Ch14GARM.pdf (last visited Oct 28, 2024).

responsible for years of issuances from his State Elections Division directing

county superintendents not to allow the votes to be counted from our paper

ballots, and subsequently ink-tallied prior to being duly certified by poll

officers.

b.) Secretary Brad Raffensperger has clearly failed in his duty to administer

O.C.G.A. § 21-2-101 (a), which is a certification program for county

superintendents or election board designees. County election officials must

become "certified by completing a certification program approved by the

Secretary of State within six months following their appointment." Such a

program "may include instruction on, and may require the superintendent to

demonstrate proficiency in, the operation of the state's direct recording

electronic voting equipment, the operation of the voting equipment used in

such superintendent's jurisdiction, and in state and federal law and

procedures related to elections." His certification program has promulgated

unlawful acts at the most fundamental and essential steps of election

administration throughout the state.

c.) Constant national press releases and public statements calling human

hand counting of our paper ballots "misguided" and "risky," such as a State

of Georgia press release by Secretary Raffensperger to the on August 15,

2024.[9] On October 14, 2024 Secretary Brad Raffensperger was publicly

interviewed by the *Washington Post* with a direct question about hand

counting ballots at the precincts.[10] He stated "You have these people

breaking open the [ballot] boxes and then starting to count the ballots. You

don't know who is actually touching that… Doing the hand count for larger

precincts will take a lot more time." Secretary Raffensperger appears to

think counting is too difficult, yet it is an elementary task. Fortunately, State

and federal law doesn't consider his counting difficulties as a valid reason to

violate Plaintiffs' rights.

d.) Statements issued on October 6th, 2022 by State Elections Director,

Blake Evans, under the authority of Secretary Raffensperger, such as

"Deciding to have poll workers hand count ballots at each polling location

on election night is not something your poll workers should do." Also, "Poll

workers should not prolong the process of removing ballots from ballot

---

[9] *Press Release: Raffensperger Defends Georgia's Election Integrity Act from Last Minute Changes,*
https://sos.ga.gov/news/raffensperger-defends-georgias-election-integrity-act-last-minute-changes-delaying-election (last visited Oct 20, 2024). (Sec. Raffensperger stated:
"Misguided efforts to impose new procedures like hand counting ballots at polling locations make it likely that Georgians will not know the results on Election Night. Additionally, having poll workers handle ballots at polling locations after they have been voted introduces a new and significant risk to chain of custody procedures.")
[10] *Brad Raffensperger on Georgia election board handcounting rules.* WASHINGTON POST LIVE, https://www.youtube.com/watch?app=desktop&v=iLmhKoQ_HXo (last visited Oct. 19, 2024).

boxes and sealing them in transport containers. This process should be done efficiently, transparently, and immediately after the polls have closed and votes have been cast." (See Exhibit D).

e.) Failure of the Office of the Secretary of State to respond in any way to a Ga Title 50 Open Records Request of September 26th, 2024 asking for "policy and procedural guidane issued to county election superintendents requiring the counties to faithfully execute the county of paper ballots and votes thereon at the level of the each precinct just after the polls close." And, citing "Ga Code 21-2-437" and "Ga Code 21-2-(11) states: "managers means the chief manager and assistant manager required to conduct primary and elecditons in any precinct in accordance with this chapter." Reminders were made and not even an acknowledgment was given, which is outside of the norm for the office.

f.) Legal opinions issued by the Assistant State Attorney General making statements blatantly contradictory to State law, such as on September 19th, 2024: "The statutes upon which these rules rely do not reflect any provision enacted by the General Assembly for the hand-counting of ballots prior to tabulation." (referring to the Ga. Comp. R. & Regs. 183-1-12-.12). And, "Neither the statutes that prescribe the duties of poll officers after the close of the polls for precincts using voting machines, see O.C.G.A. § 21-2-454,

nor the precincts using optical scanners, see O.C.G.A. § 21-2- 485, suggest

that the General Assembly contemplated that a hand-count of the ballots

would be part of the "required accounting."[11] She left out the ruling of the

Georgia Supreme Court in *Rhoden* that our elections are by paper ballot.

g.) Failure of Governor Kemp, Secretary Brad Raffensperger, or Attorneys

for the State of Georgia to respond in any way whatsoever to Plaintiffs'

formal call for immediate executive action by means of an "Executive Order

to Maintain uniformity of Election Law in the November 5th Presidential

General Election" by the deadline by October 25th. (See Exhibit B).

Plaintiff Metz hand-delivered Exhibit B to the Office of the Governor and

Office of the Secretary of State on October 24, 2024.

22.    Plaintiff Thompson has witnessed in the past, and what appears to be

impending for November 5th, **unlawful property transfers** of our cast paper

ballots from our fixed **Precinct Election Locations** to county jurisdictional offices

prior to the counting of Plaintiffs' votes. This has occurred through executive

branch rules in every primary and election since the March 2020 primary. It

appears to represent the execution of unlawful executive government control.

---

[11] Request for Comments on Proposed Rules in Advance of September 20, 2024 State Election Board Meeting from Assistant Attorney General Elizabeth Young to the State Election Board, Sep. 19, 2024, https://s3.documentcloud.org/documents/25169004/20240919-memo-to-state-election-bo ard-re-proposed-rules-920-meeting.pdf (last visited Oct 30, 2024).

These actions represent authoritarian and possibly felonious acts against State and federal law that are destroying our system of government. Plaintiffs notified their Sheriffs of this by email on either October 28th and October 30th, and neither has replied in affirmation of the rule of law in their regard. (Exhibit C).

23.    The most fundamental election requirements of our General Assembly, which is O.C.G.A. § 21-2-437, dating back to Ga Code of 1863, § 1234 are being subverted by what appears to be **chronic felonious acts by sworn government officials.** These acts appear to be committed under Ga Title 16 [Crimes and Offenses], 45 [Public Officers and Employees], and 21 [Elections].

24.    The following unlawful acts by the state appear to be pending, all of which will injure Plaintiffs' protected voting right under state and federal law: O.C.G.A. § § 16-10-20.1 (Filing false documents); § 45-11-1 (Offenses involving public records); § 21-2-562 (Fraudulent entries); § 21-2-604 (Criminal solicitation to commit election fraud; penalties); § 21-2-603 (Conspiracy to commit election fraud); § 16-10-20 (False statements and writings); § 21-2-596 (Failure of public or political officer to perform duty); § 21-2-600 (Punishment for felonies under chapter); § 16-10-71 (False swearing); § 16-10-1 (Violation of oath by public officer); § 16-9-53 (Damaging, destroying, or secreting property to defraud another); § 16-2-20 (When a person is party to a crime; aiding and abetting) and § 16-2-21 (Who did not directly commit the crime). There are also apparent

22.

violations of § 45-10-3 (Code of ethics for members of boards, commissions, and authorities). At least the following federal crimes appear to be pending: 18 U.S.C. § 595, 18 U.S.C. § 241, 18 U.S.C. § 242, and 18 U.S.C. § 1018.

**25.    Georgia has only one chance to get this right - on Election Day, November 5th. An election is absolutely void** when not held at the proper TIME and PLACES and MANNER by persons qualified to hold it. *Smiley v. Gaskin,* 115 Ga. App. 547 (1967). This includes the election of presidential electors pursuant to 3 U.S.C. § 1 and U.S. Congressman per 2 U.S.C. § 9.

26.    Sworn election officials must perform their ministerial mandates of law required for PRECINCT, COUNTY, and STATE CERTIFICATION of only lawful returns per O.C.G.A. §§ 21-2-437, 21-2-493 and 21-2-499, respectively. Poll officers must duly certify based on human hand count of the paper ballots and ink tallies of the votes printed on the paper ballots. County election officials cannot perform the mandates of law without precinct returns. *Julie Adams v. Fulton County et al.,* Fulton County Superior Court, Order of 10.14.24. These returns must be duly certified by poll officers by State law O.C.G.A. § 21-2-437. Secretary of State Raffensperger, who is Georgia's chief election official under state provisions of the National Voter Registration Act of 1993, can present only lawfully certified results to Governor Kemp. See O.C.G.A. 21-2-499, 21-2-501, and 21-2-502. Furthermore, the Governor cannot issue lawful certificates of

election and commissions per O.C.G.A. § 21-2-502 without lawful county certifications. He also cannot produce the federally required certificate of ascertainment for presidential electors appointed on Election Day without all of these requisite actions lawfully conducted by Defendants on November 5th.

**The Election Superintendents of Bulloch County and Cobb County are failing to follow** O.C.G.A. § 21-2-493, including the subsections specifically mandating administrative procedures for "Precinct in which paper ballots have been used," especially (g) requiring figures to be compared with tally papers from the respective precincts.

27.    The following other subsections of O.C.G.A. Title 21 are not being followed:

> (a) The superintendent shall, after the close of the polls on the day of a primary or election, at his or her office or at some other convenient public place at the county seat or in the municipality, of which due notice shall have been given as provided by Code Section 21-2-492, publicly commence the computation and canvassing of the returns… **[They have no duly certified returns].**

> (b) The superintendent, before computing the votes cast in any precinct, shall compare the registration figure with **the certificates** returned by the poll officers showing the number of persons who voted in each precinct or the number of ballots cast. **[There are no duly certified returns per Ga Code 21-2-437(b)].**

### JURISDICTION AND VENUE

This Court has jurisdiction over Plaintiff's Complaint under 28 U.S.C. §§

1331 and 1343. This Court has supplemental jurisdiction over Plaintiffs'

subsequent claims, which are based on State law, under 28 U.S.C. § 1367. The

jurisdiction of the District Court over this action is founded on the Action of

Congress of June 25, 1948, c. 646, Sec. 1, 62 Stat. 932, 28 U.S.C.A. § 1343, which

provides in part as follows:

> Civil rights. The district court shall have original jurisdiction of any
> civil action authorized by law to be commenced by any person:
>
> (3) To redress the deprivation, under color of any State law, statute,
> ordinance, regulations, custom, or usage, of any right, privilege or
> immunity secured by the Constitution of the United States or by any
> Act of Congress providing for equal rights of citizens or of all persons
> within the jurisdiction of the United States.

Venue in the United States District Court for the Northern District of

Georgia is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

1.      Plaintiff, Sarah E. Thompson, as an individual, is a registered voter, taxpayer

and resident of Bulloch County, Georgia residing at 150 Timber Cove, Statesboro,

GA 30461.

2. Plaintiff, Edward T. Metz, as an individual, is a registered voter, taxpayer, and resident of Cobb County, GA residing at 6231 Dodgen Rd. SW, Mableton, GA 30126.

3. Defendant, Brad Raffensperger, acting in his official capacity as the Secretary of State for the State of Georgia since January 2019, which is a state constitutional executive officer position. At all times relevant hereto he acted under color of office.

4. Defendant, Brian Kemp, acting in his official capacity, as the Governor of the State of Georgia since January 2019, which is a state constitutional executive officer position. At all times relevant hereto he acted in concert with the Secretary of State and under color of office.

5. Defendant Theresa Jackson, in her official capacity as member of the Bulloch County Board of Elections.

6. Defendant Jim Benton, in his official capacity as member of the Bulloch County Board of Elections.

7. Defendant William Daughtry, in his official capacity as member of the Bulloch County Board of Elections.

8. Defendant Shontay Jones, in her official capacity as Election Supervisor of Bulloch County.

9.     Defendant Marilyn Fronte, in her official capacity as Assistant Election Supervisor of Bulloch County.

10.    Defendant Steven F. Bruning, in his official capacity as member of the Cobb County Board of Elections and Registration.

11.    Defendant Tori Silas, in her official capacity as member and chairwoman of the Cobb County Board of Elections and Registration.

12.    Defendant Stacy Efrat, in his/her official capacity as member of the Cobb County Board of Elections and Registration.

13.    Defendant Debbie Fisher, in his/her official capacity as member of the Cobb County Board of Elections and Registration.

Defendant Jennifer Mosbacher, in his/her official capacity as member of the Cobb County Board of Elections and Registration.

14.    Defendant Tate Fall, in her official capacity as Cobb County Director of Elections, Cobb County Elections & Registration.

## CLAIM FOR RELIEF

### Count 1:

The allegations contained in the preceding paragraphs are alleged as if fully set forth herein.

27.

## Count 2:

Secretary Raffensperger's ongoing, direct and public deterrence, interference with, failure to perform, and prohibition of the counting of Plaintiffs votes in accordance the statutory provisions of law governing use of paper ballots, in addition to ongoing training of registrars and superintendents in violation of State law denies Plaintiff their right to vote protected by 52 U.S.C. § 10101 and 52 U.S.C. 10307(a) & (b). These acts represent coercive denial of right. Secretary Raffensperger has egregiously failed in his sworn duty to support the U.S. Constitution.

## Count 3:

Governor Kemp has demonstrated complete failure to perform his duties as the chief state constitutional executive officer in this matter, as Governor and as former Secretary of State who laid the groundwork for this system of voting. Governor Kemp has failed to ensure that the laws of the State of Georgia are faithfully executed and failed to be a conservator of the peace. He has failed to execute power to maintain order throughout this state, per Article V of the Ga Constitution. He has egregiously failed in his sworn duty to support the U.S. Constitution.

## Count 4:

Secretary Raffensperger's directives to county superintendents to transfer Plaintiff Thompson's impending paper ballot election property away from her Voting

Precinct to the county superintendent, instead of allowing it to remain at the polling

location until the required accounting by sworn poll officers is completed,

including the hand counting of their ballots and votes counting by ink tally and

production of duly certified returns, changes the fixed Time and Place of election

by State law. This deprives Plaintiffs of her federal voting right under color of law

including her right to vote for her U.S. Representative and U.S. President per 2

U.S.C. § 9 and 3 U.S.C. § 1

## Count 5:

With the ongoing public and government prohibitions of State law by Secretary

Raffensperger, all Georgia voting precincts are pending as not duly certified per the

mandates of law governing paper ballots. As such, the so-called "election returns"

that Secretary Raffensperger plans to receive from Bulloch and Cobb counties

cannot be canvassed, computed, or certified, which is his duty in O.C.G.A. §

21-2-50(6). Yet, only lawful county returns can be canvassed and computed. And,

only lawful returns can be consolidated and certified. This fraud, if left unchecked

by the federal court, allows voidable conditions for state election certificates,

commissions of public officials, and a false certificate of ascertainment for

presidential electors, which must be filed into the federal record.

## Count 6:

Secretary Raffensperger is failing to ensure the equal treatment of voters. Those who vote provisionally, with paper ballots, have the ability to have a paper ballot that is manually counted. However, those whose absentee and Election Day ballots are processed unlawfully for voting purposes through the optical scanning system must forfeit their right to have their vote counted in accordance with law. This demonstrates lack of uniform treatment of voters and denial of rights under color of law, which are flagrant 14th Am. Equal Protection and/or Due Process claims.

## Count 7:

County Election Officials of Bulloch and Cobb counties have egregiously failed to uphold the laws of the State of Georgia governing elections in their federal election jurisdictions. They have negligently acted and directly refused to perform duties required by State law under Chapter 2 Election Code of the Georgia Title 21. They have failed to receive only lawful returns from polling locations, many of whom have been in their public position since March 2020. They have failed to instruct poll officers and others in their duties as prescribed by State law.

## BASIS FOR RELIEF

1.    Federal Courts have a long history of correcting state actors for violating

federal law. For example, The Supreme Court Justice Douglas held that federal

district court properly enjoined conduct of statewide primary election under a

county unit system in *Gray v. Sanders*, 372 U.S. 368 (1963).

2.    Plaintiff asserts grounds for a temporary restraining order without written or

oral notice to the adverse parties, as immediate and irreparable injury, loss, or

damage will result to the Plaintiffs before the adverse parties or their attorneys can

be heard in opposition. Public officials of the State of Georgia, Bulloch County,

and Cobb County have had their chance to comply, and they have repeatedly failed

to do so. Injury is imminent on November 5th.

## There is a strong public interest in favor of a restraining order.

3.    The cast ballots and votes of the Plaintiffs must be included in elections for

their choices for U.S. Representative and U.S. President. Denying them the right to

vote under color of state or federal law is egregiously against their interest and that

of the public.

4.    The avoided yet required acts, which are the basis for this request for the

Defendants to be restrained, can be conducted at Plaintiffs' polling location with

already present, sworn poll officers; it requires common pens and paper already

31.

owned by the respective counties. The procedure, broken down into steps, fit on one page, and with a process that can be trained in 30 minutes. (See Exhibit C, pg. 8).

5.       Human conduct of this specific State law, O.C.G.A. § 21-2-437, which is rooted in historical Ga Code of 1863, § 1234 is not only mandatory for certification at Plaintiffs' polling locations, **IT IS EASY. Counting is EASY. This is also based in human history. Humans have been counting things from the beginning of time.** Nearly all precincts contain less than 2,000 electors per O.C.G.A. § 21-2-263.

6.       Plaintiffs must be able to know that the government process upon their paper ballot maintains the integrity of their intent, as cast. A "legal vote," as determined by the Supreme Court, is "one in which there is a 'clear indication of the intent of the voter.' " *Bush v. Gore,* 531 U.S. 98, 102, 121 S. Ct. 525, 528, 148 L. Ed. 2d 388 at 1257 (2000). This is a ZERO confidence situation because Plaintiffs are 100% aware that their votes will not be counted or included in vote total in accordance with State law. This constitutes intentional infliction of extreme stress and injury to Plaintiffs. Court can easily see the balance in the Plaintiffs' favor for these claims and protecting First Amendment rights to free speech and thought.

7.       As are Plaintiffs, in *Fitzgerald* the plaintiff was entitled to assert the § 1983 equal protection claim enforcement of the Equal Protection Clause, a constitutional

claim under § 1983. What is most significant about the Court's decision is its language, which supports a strong presumption that federal statutory schemes should not be interpreted to preclude assertion of § 1983 constitutional claims. *Fitzgerald v. Barnstable School Committee*, 129 S. Ct. 792 (2009).

8.      There is nearly zero state interest of any importance weighing toward denying Plaintiffs federal right to vote. Incompetence and unlawful deeds cannot be rewarded with a repeat performance.

9.      Complete disenfranchisement, such as this, is obviously a "severe" burden. See *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312 (11th Cir. 2019), 915 F.3d at 1321("[I]t is a 'basic truth that even one disenfranchised voter - let alone several thousand - is too many'")(quoting *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224 (4th Cir. 2014); *Fla. Democratic Party v. Detzner*, No. 4:16cv607-MW/CAS, 2016 WL 6090943, at *6 (N.D. Fla. Oct 16, 2016)("If disenfranchising thousands of eligible voters does not amount to a severe burden on the right to vote, then [it is not clear] what does."

## **Plaintiffs are likely to succeed on the merits.**

10.     Plaintiff is likely to prevail on the merits of this case and future cases against Defendants via claim that the Defendant has violated the laws of this state by and

through denial of *rights* for which there is no adequate and *immediate remedy* available to Plaintiffs under law. State and county superintendents have mishandled the law and election property in a manner of misconduct and negligence. They have failed to conduct the ministerials mandates of law ensuring uniformity of law in Plaintiffs' jurisdiction.

11.     **There is serious, irreparable injury to Plaintiff if this order is not immediately granted. There is no injury to any Defendant public official if this order is granted. This order actually protects officials from repeating unlawful acts under state and federal law, both civil and criminal.** Georgia officials should be apologizing profusely to Plaintiffs, and perhaps that should occur from a venue of federal criminal indictment.

12.     Nothing about this order is against public policy or public interest. Instead, it ends a long trend of violation of public interest law regarding elections. *Dekalb Co. Sch. Dist. v. Ga. State Bd. of Educ.*, 294 Ga. 349, 353(1a)(2013). Public officers are the trustees and servants of the people and are at all times amenable to them. *Ga. Const.*, Art. I, § II, Para I.

13.     The Supreme Court confirms that Sec. 1983 can be used by private litigants to enforce voting rights. This is to ensure the principle of uniformity and materiality provisions for elections. As cited in a 2023 Wake Forest University law review "Even apart from any potential partisan advantage, the Uniformity Principle

counsels that interjurisdictional inconsistencies or disparities that materially affect

a person's ability to cast a vote or have it counted in a statewide or other

multicounty election are intrinsically suspect and inconsistent with recognition of

voting as a fundamental right.[12] *Bush v. Gore* affirmed long-established

precedent… "Its decisions were rooted in long-established precedent and were

consistent with the relevant statutory provisions, taken as a whole. It did what

courts do—it decided the case before it in light of the legislature's intent to leave

no legally cast vote uncounted."[13]

14.    There are multiple sources of basis for relief iterated in *United States v.*

*Classic,* 313 U.S. 299 (1941):

> The right to vote for Representatives in Congress is a right "derived from the
> States," only in the sense that the States are authorized by the Constitution to
> legislate on the subject, as provided by § 2 of Art. I, to the extent that
> Congress has not restricted state action by the exercise of its powers to
> regulate elections under § 4, and its more general power, under Art. I, § 8, cl.
> 18, "to make all laws which shall be necessary and proper for carrying into
> execution the foregoing powers." (pg. 313 U.S. 316).
>
> Also, included within the right to choose, secured by the Constitution, is the
> right of qualified voters within a State to cast their ballots and have them
> counted at Congressional elections. (pg. 313 U. S. 315).

---

[12] Michael T. Morley, *Bush v. Gore's Uniformity Principle and the 2020 Election,* 58
Wake Forest L. Rev. 179, 205 (2023). This is not *Donald J. Trump for President, Inc. v.
Boockvar,*...

[13] *Bush v. Gore,* 531 U.S. 98, 128, 121 S. Ct. 525, 542, 148 L. Ed. 2d 388 (2000).

Since the constitutional command is without restriction or limitation, this right, unlike those guaranteed by the Fourteenth and Fifteenth Amendments, is secured against the action of individuals, as well as of States." (pg. 313 U. S. 300). "

The times, places and manner of holding elections for Senators and Representatives shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators. (pg. 313 U. S. 331).

Such right as is secured by the Constitution to qualified voters to choose members of the House of Representatives is thus to be exercised in conformity to the requirements of state law subject to the restrictions prescribed by § 2 and to the authority conferred on Congress by § 4, to regulate the times, places and manner of holding elections for representatives. (pg. 313 U. S. 311).

## Plaintiffs will suffer irreparable harm absent a temporary restraining order.

15.    **Any infringement on our right to vote is irreparable harm.** When

constitutional rights are threatened or impaired, irreparable injury is presumed. See

*ACLU of Ky. v. McCreary County, Ky.,* 354 F.3d 438, 445 (6th Cir. 2003). A

restriction on the fundamental right to vote therefore constitutes irreparable injury.

See *Williams v. Salerno,* 792 F.2d 323, 326 (2d Cir.1986) ("irreparable harm"). As

cited in *Obama for Am. v. Husted*, 697 F.3d 423 (6th Cir. 2012). Failure to act

deprives Plaintiffs of aspects of their federal right to vote under 52 U.S. Code §

10101(e); this election included federal candidates. The election law is in

derogation of the common law and must be strictly construed. *Watson v.*

*Thompson*, 185 Ga. 402, 407 (195 SE 190); *Foster v. Vickery*, 202 Ga. 55, 60 (42 SE2d 117); *Laite v. Stewart*, 112 Ga. App. 853 (2, 3, 4) (146 SE2d 553).

16.     Failing to restrain officials amidst imminent injury adds further irreparable injury to Plaintiff. **Years of this repeat irreparable injury,** that last occurred in the May 2024 Georgia primary will be compounded by allowing an unlawful "election" to go forward. What will occur on November 5th is not an election without the rule of law. A restraining order will provide an *immediate* check to public fraud.

18.     Provisional voters have more protection than Plaintiffs, as their paper ballots are counted per paper ballots provisions. The lines of Plaintiffs voting area are being completely disregarded by public officials, as their voted ballots are removed from the polling location before votes are counted and precinct returns duly certified to include them. The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another. See, *e.g., Harper v. Virginia Bd. of Elections,* 383 U.S. 663, 665, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment"). It must be remembered that "the right of suffrage

37.

can be denied by a debasement or dilution of the weight of a citizen's vote just as

effectively **as by wholly prohibiting the free exercise of the franchise.""**

*Reynolds v. Sims,* 377 U.S. 533, 555, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

19.    "As Hamilton's discussion in The Federalist Nos. 59–61 made clear, the

"Times, Places and Manner" provisions of the Election Regulations Clause were to

be taken literally. They referred to states having the primary power of determining

the dates, the locations, and the conditions under which elections for federal

Senators and Representatives would be held." David F. Forte & Matthew Spalding.

*The Heritage Guide to the Constitution,* U.S. Const. amend. I, Cl. 4 (2nd ed. 2014).

20.    8 U.S.C. § 43 states, in pertinent part, that:

> Every person who, **under color of any statute**, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> **subjects, or causes to be subjected,** any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, **shall be
> liable** to the party injured in an action at law, suit in equity, or other proper
> proceedings for redress,...

21.    District Courts have a recent history of granting Temporary Restraining

Orders in matters of elections and voting, such as in the case of *Forward v. Ben*

*Hill Cnty Bd. of Elections,* 512 F.Supp 3d 1354 (M.D. Ga. 2021) and *Ohio*

*Republican Party v. Brunner*, Secretary of State of Ohio, 544 F.3d 711 (2008).

Neither was not such an acute matter and did not involve total deprivation and

forfeiture to an unconstitutional and unlawful system outside of State law, as is occurring in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court issue an emergency temporary restraining order to Defendants as follows, or as deemed necessary:

1.     Order Cobb and Bulloch County Election Superintendents to refrain from continuing to administer precinct conduct in violation of O.C.G.A. § 21-2-437.

2.     Order Cobb and Bulloch County Election Superintendents not to receive and file unlawful, uncertified, and false "precinct returns" created from electronic "result tapes" that are from neither a voting machine nor paper ballot procedure of O.C.G.A. § 21-2-437.

3.     Order Cobb and Bulloch County election superintendents to not withhold tally papers and voted paper ballots from public inspection and photocopying in the days following Election Day under O.C.G.A. § 21-2-72, which are neither prohibited or exempt from disclosure in any way by court order or State law. This is a protection for citizens and provides verifiable public records necessary to properly file any election contest.

4. Order Cobb and Bulloch County election superintendents to immediately refrain from further withholding the requirements and training to conduct O.C.G.A. § 21-2-437 from their poll officers.

5. Order Cobb and Bulloch County election superintendents to refrain from interfering with poll officers in their required accounting of tally papers and paper ballots on November 5th, 2024.

6. Order Governor Kemp and Secretary Raffensperger to refrain from violating O.C.G.A. § 21-2-437 in any way.

7. Order Governor Kemp and Secretary Raffensperger to refrain from interfering with the accounting of tally papers and paper ballots by poll workers per O.C.G.A. § 21-2-437.

8. Order Governor Kemp and Secretary Raffensperger to refrain from their public campaign to falsely label poll officers and election officials of being "misguided" in their plans to conduct State law at polling locations.

9. Order Governor Kemp and Secretary Raffensperger to refrain from asserting a well entrenched pattern of deterrence of county election officials and subordinates from complying with State law prescribing the Article 1 time, place and manner of election, which is voting by paper ballot on Election Day at Plaintiffs' Voting Precinct or Advanced Polling Location per O.C.G.A. § 21-2-437.

10.    Order Governor Kemp and Secretary Raffensperger to demonstrate that they

have refrained from 6, 7, 8, 9 by issuing an Official Election Bulletin and some sort

of Executive Order or Official Document from the Office of the Governor to

ensure that the laws of the State of Georgia are faithfully executed on November

5th, 2024.

Defendant public officials must uphold constitutional rights and privileges,

including the federal right to vote. They must do it now. Plaintiffs respectfully

request that their emergency motion for temporary restraining order be

GRANTED. So go Plaintiffs, so goes the State of Georgia.


Respectfully submitted this 31st Day of October, 2024,

Sarah E. Thompson, Pro se Plaintiff
Signed under penalty of perjury

Edward T. Metz, Pro se Plaintiff
signed under penalty of perjury

Sarah Thompson, Pro se
150 Timber Cove
Statesboro, GA 30461
(856) 866-6881
freedomwinsusa@protonmail.com

Edward T. Metz, Pro se
6231 Dodgen Rd. SW
Mableton, GA 30126
(404) 831-9288
tedmetz@gmail.com

Notary Public Signature

Stephen M George Jr
NOTARY PUBLIC
Cobb County, GEORGIA
My Commission Expires 03/31/2027

Commission Expiry Date

42.